IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIK MILLER, | ) |
|     Plaintiff, | ) No. 21-cv-02143 |
|     v. | ) Judge Jeffrey I. Cummings |
| DALE HASTERT, an individual, AND UR, INC., an Illinois corporation | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Erik Miller brings this diversity action against defendants Dale Hastert and UR, Inc., seeking declaratory relief that Miller is a twenty-five percent shareholder of UR, and damages under the Illinois Business Corporation Act of 1983, 805 ILCS 5 *et seq*. for alleged shareholder oppression. On December 13, 2022, defendants filed a motion for summary judgment, (Dckt. #36), asserting that this Court lacks subject matter jurisdiction because Miller has failed to satisfy the amount-in-controversy requirement necessary to establish diversity jurisdiction. (Dckt. #37). On January 13, 2023, plaintiff filed a cross-motion for partial summary judgment, (Dckt. #40), asserting that he is entitled to a declaratory judgment that he is a twenty-five percent shareholder of UR and a judgment that defendants oppressed him as a shareholder of UR. (Dckt. #41). For the following reasons, defendants' motion for summary judgment is granted because this Court lacks diversity jurisdiction. Furthermore, because this Court lacks subject matter jurisdiction, plaintiff's cross-motion for partial summary judgment is denied as moot.

1

I.     FACTUAL RECORD

The following facts are undisputed unless otherwise noted.  In 2011, defendant Hastert launched defendant UR.  (Defendants' Statement of Facts in Opposition to Miller's Cross-Motion for Partial Summary Judgment ("DSFIO"), Dckt. No. #47 ¶1).  UR is a privately-held corporation that, at the time of the relevant events, was in the business of marketing and selling dietary and nutritional supplement products.  (Plaintiff's Statement of Facts in Support of Cross-Motion for Summary Judgment ("PSOF"), Dckt. No. #42 ¶1; Plaintiff's Statement of Additional Material Facts ("PSAF"), Dckt. #42 ¶6).  The company is authorized to issue 1,000 shares of stock.  (PSOF ¶2).

Plaintiff Miller became familiar with UR in or around 2016 when he performed work as an independent contractor for the company.  (PSAF ¶5).  Prior to working with UR, Miller held several jobs focused on developing new products and business lines through digital marketing.  (*Id.* at ¶2).  At the end of 2017, Miller received a certificate for 250 shares of UR stock.  (PSOF ¶3).  Hastert testified at his deposition that he and Miller entered a verbal agreement whereby Miller was "going to put in sweat equity in order to provide compensation for his shares" since he had "given no financial consideration."  (Dckt. #42-2 at pg. 11).  Defendants contend that Miller failed to put in the necessary long-term commitment (i.e., "sweat equity") required by the parties' verbal agreement.  (DSFIO ¶9).

For the next sixteen months – until the spring of 2019 – Miller had access to UR's books and records.  (*Id.* at ¶13).  Miller observed that UR's sales increased by nearly $40,000 in 2018, when compared to 2017 sales.  (PSAF ¶18).  Miller was also aware that in November 2018, UR had a "record month," reflecting a ten percent increase in sales compared to November 2017.  (*Id.* at ¶26).  Hastert also informed Miller that UR planned to trademark a food-based product

2

called "Bangarang." (*Id.* at ¶¶7, 10). Ultimately, UR abandoned its trademark application for Bangarang and Hastert applied for the trademark in his individual name. (*Id.* at ¶11). In the spring of 2019, Miller's access to UR's books and records was terminated after he moved to California. (*Id.* at ¶27; DSFIO ¶22).

During the period relevant to this matter, UR paid for cellular phone plans for Hastert, his wife, and his children, including phone lines that were used in full or in part for their personal matters. (PSAF ¶19). In 2018 and 2019, UR spent $5,401.52 and $5,248.74, respectively, on cell phone plans according to UR's financial statements. (*Id.*; Dckt. #42-6 at 3). UR also paid for automobiles for Hastert and his sons that were used for both business and personal purposes. (PSAF ¶20). The parties dispute whether Miller knew and agreed that UR could pay for cellular phones and automobiles for Hastert's family. (*Id.* at ¶21).

In connection with this case, defendants obtained a Valuation Report prepared by William P. McInerney, an accredited senior appraiser. (Defendants' Statement of Facts ("DSOF") Dckt. #38 ¶9). In his report, McInerney opined that the value of a twenty-five percent equity interest in UR on the date the complaint was filed was zero dollars. (Dckt. #38-1 ¶62). McInerney further opined that the total purchase price of the two vehicles put into service by UR while Miller was a shareholder was $61,320. (Dckt. 38-1 ¶51). It was also McInerney's opinion that the Bangarang asset does not "have much (if any) value." (*Id.* at ¶56).

In reaching his conclusions, McInerney relied on, among other things, UR's financial statements and tax returns. (Dckt. #38-1 at 7). Hastert, however, was unable to explain various entries within UR's financial statements and tax returns at his deposition. (PSAF ¶28) (citing, *e.g.*, Dckt. #42-2 at pgs. 40–41 (claiming no understanding of consequences of a K-1, did not

3

know what asset balance means, and did not know what utilities line item was for and claimed it was a misclassification)).

On April 21, 2021, Miller filed his two-count complaint against Hastert and UR asserting that federal diversity jurisdiction was proper, and his damages exceeded $75,000. (DSOF ¶1). In Count I, Miller seeks a declaration that he owns twenty-five percent of UR. (*Id.* at ¶6, Compl. ¶44). In Count II, Miller requests an accounting and the entry of an order requiring UR to purchase Miller's share of the business at a fair value. (*Id.* at ¶7, Compl. ¶55).

## II.   LEGAL STANDARD

Summary judgment is appropriate when the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A genuine dispute is present if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024); *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 584 (7th Cir. 2021) (the existence of a factual dispute between the parties will not preclude summary judgment unless it is a genuine dispute as to a material fact); *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004) (issues of material fact are material if they are outcome determinative).

When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to concoct factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, it must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009). Thus, a mere "scintilla of evidence" supporting the non-movant's position does

not suffice; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248. In determining whether a genuine issue of material fact exists, all facts and reasonable inferences must be drawn in the light most favorable to the non-moving party. *King v. Hendricks Cty. Commissioners*, 954 F.3d 981, 984 (7th Cir. 2020); *NES Rentals Holdings, Inc. v. Steine Cold Storage, Inc.*, 714 F.3d 449, 452 (7th Cir. 2013). Ultimately, summary judgment is granted only if "no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (cleaned up). The standard for summary judgment remains unchanged on cross-motions for summary judgment. *Blow v. Bijora, Inc.,* 855 F.3d 793, 797 (7th Cir. 2017).

### III. DISCUSSION

In their motion for summary judgment, defendants seek judgment in their favor on the ground that this Court lacks subject matter jurisdiction because plaintiff has failed to show that the value of his claims satisfies the $75,000 amount-in-controversy requirement for federal diversity jurisdiction. In his cross-motion, Miller seeks: (1) a declaratory judgment that he is a twenty-five percent shareholder of UR; and (2) a judgment that defendants oppressed him as a shareholder of UR.

### A. This Court Lacks Subject Matter Jurisdiction Over Miller's Claims.

Miller bases federal jurisdiction on diversity jurisdiction pursuant to 28 U.S.C. §1332 which requires: (1) diversity of citizenship between plaintiff and defendants; and (2) the amount in controversy to exceed $75,000, exclusive of interest and costs. 28 U.S.C. §1332(a)(1). The parties agree that complete diversity between Miller and defendants exists. Defendants' motion for summary judgment thus turns on whether the amount in controversy of plaintiff's claims exceeded $75,000 at the time Miller filed suit. The Court finds that it did not.

### 1. Miller has not put forth competent proof that his declaratory judgment claim exceeds the amount-in-controversy requirement for diversity jurisdiction.

In a declaratory judgment action, "the amount in controversy is measured by the value of the object of the litigation"—here, the value of Miller's shares. *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 347 (1977). Miller argues that the Court can exercise diversity jurisdiction over his claims because Miller had a good-faith belief when he filed his complaint that the value of his UR stock exceeded $75,000 based on: (1) his years of business experience; (2) his knowledge that UR had strong sales in 2018; (3) the fact that UR had a "record month" in November 2018; and (4) the fact that UR planned to launch the Bangarang product. (Dckt. #41 at 8).

Miller's argument confuses his burden at this stage. Challenges to subject-matter jurisdiction may be either facial or factual. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). "Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Id.* at 443. In contrast, factual challenges allow the court to "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* at 444 (citations omitted). When a defendant contests a plaintiff's factual claims regarding the amount in controversy, as defendants do here, the plaintiff must support his claim with "competent proof" to establish the "jurisdictional facts by a preponderance of the evidence." *McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009) (cleaned up).

The support offered by Miller does not meet this burden. Even drawing all reasonable inferences in Miller's favor, the only "proof" Miller relies on to establish the value of his stock is historical financial information about UR from 2018—predating Miller's 2021 lawsuit by three

years. Miller has not offered any evidence which demonstrates the value of his interest in UR on April 21, 2021 (the day he filed his complaint), let alone any evidence that the value exceeded $75,000 on the date of filing.

Miller also fails to put forth competent proof which disputes McInerney's opinion that Miller's stock had no value on the date the complaint was filed. Instead, Miller takes issue with the fact that the expert relied on financial and tax information provided to him by UR because Hastert was unable to testify to various entries on those documents. Miller also faults the expert for allegedly failing to consider: financial entries which purportedly demonstrate that UR's profitability was not depressed; how post-pandemic recoveries impacted his valuation of plaintiff's stock; and whether UR customers were impacted by the pandemic. (Dckt. #41 at 9).

However, Miller has not explained how McInerney's failure to correct for these purported flaws has materially impacted his analysis. In other words, Miller has failed to show that had McInerney properly accounted for these flaws, his opinion that the stock has no value would have changed to an opinion that the stock was worth more than $75,000 on the day Miller filed this lawsuit. Nor has Miller offered any countervailing expert evidence regarding the value of his stock. Without such evidence, Miller has failed to materially dispute the defense expert's valuation of his stock at the pertinent time. *See Davis v. LeClair Ryan, P.C.*, 363 Fed.Appx. 395, 397 (7th Cir. 2010) (affirming dismissal for lack of subject matter jurisdiction where plaintiff relied "upon only speculation that he c[ould] meet the jurisdictional threshold."); *see also Johnson v. Olson*, No. 14-cv-2551, 2015 WL 1119418, at *1 (N.D.Ill. Feb. 26, 2015) (dismissing case for lack of subject matter jurisdiction where defendants submitted expert testimony that the value of the horses at issue was $500 each and plaintiff failed to provide any competent proof, not even a sworn declaration, to support her valuation that they were each worth $5,000). Thus,

7

the Court finds that Miller has failed to show that his declaratory judgment claim has sufficient value to meet the amount-in-controversy requirement.

> **2. Miller has not put forth competent proof that his claims under the Illinois Business Corporation Act exceed the amount-in-controversy requirement to establish diversity jurisdiction.**

Miller argues that even if his shares are worth less than $75,000 this Court still has subject-matter jurisdiction over his case based on his shareholder oppression claim under the Illinois Business Corporations Act (the "Act"). Under the Act, relief is available where the "directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent with respect to the petitioning shareholder" and/or "the corporation assets are being misapplied or wasted." 805 ILCS 5/12.56(a)(3) - (4). In an action for oppression or waste, a court may grant relief including an accounting, damages, and/or requiring the corporation to purchase the shareholder's shares at a fair market value. 805 ILCS 5/12.56(b)(5), (10), (11). Here, however, Miller has failed to provide competent proof that he would be entitled to recover more than $75,000 on his shareholder oppression claims.

> **a. Miller has not demonstrated that his recovery of damages on his corporate waste claim would exceed $75,000.**

Miller alleges he was oppressed when Hastert: (1) used company funds to pay for cell phone plans and automobiles for his family; and (2) caused UR to abandon the Bangarang trademark, then reapplied for the trademark in his individual name.

Other than asserting that Hastert spent more than $5,000 annually on cell phone plans for himself and his family in 2018 and 2019, Miller does not put forth any proof demonstrating the value of his damages for defendants' allegedly oppressive acts. Nor does Miller offer any evidence of the value of the vehicles at issue or the Bangarang trademark. Miller simply asserts, without support, that the damages he seeks will exceed the jurisdictional threshold. (Dckt. #41 at

8

10). Miller's mere speculation does not constitute "competent proof" which establishes "jurisdictional facts by a preponderance of the evidence." *McMillian*, 567 F.3d at 844; *Davis* 363 Fed.Appx. at 397; *Johnson*, 2015 WL 1119418, at *1 (dismissing case where plaintiff failed to put forth her own valuation of the horses which formed the basis of claim and instead relied on the allegations in her complaint).

Even viewing the facts regarding defendants' alleged corporate oppression and waste in a light most favorable to Miller, the record confirms his damages would fall short of the jurisdictional requirement. Defendants' expert opined that the combined purchase price of the two vehicles UR placed into service in 2018 and 2019 (while Miller was a purported shareholder) was $61,320.[1] (Dckt. #38-1 at ¶51; Dckt. #42-9 at 16). The expert further opined that Bangarang has no economic value. (Dckt. #38-1 at ¶¶55–56). Miller has put forth no evidence rebutting these valuations; thus, the record reflects that the damages in this matter amount, in aggregate, to no more than $71,970.26 ($61,320 for the vehicles and $10,650.26 for the cell phone plans). Even more, Miller cites no authority for why he would be entitled to recover the entire balance of the alleged waste, in light of the fact that he admits that the vehicles and cell phones were used at least for some business purposes. *Scott v. Bender* 893 F.Supp.2d 963, 973 (N.D.Ill. 2012) (dismissing case for lack of diversity jurisdiction where, among other things, plaintiff claimed damages for expending 200 hours of work but failed to even allege what

---

[1] The Court notes that two of the vehicles listed as property on UR's 2018 tax return were placed into service years *before* Miller received his interest in UR. (Dckt. #42-8 at 16 (listing a Ford Focus placed in service in December 2013 and Hyundai placed into serviced in June 2015)). Miller has provided no explanation how he, as a non-shareholder at the time, was oppressed by the purchase of these vehicles.

9

amount he would be entitled to for such work). In sum, even considering Miller's shareholder oppression claim, the amount in controversy is still beneath the jurisdictional threshold.[2]

### b. Miller's assertion that he will be awarded punitive damages does not rise above speculation.

Perhaps recognizing his potential compensatory damages fall short of the jurisdictional threshold, Miller argues the $75,000 requirement is met if this Court considers his potential recovery of punitive damages for defendants' alleged violations of the Act. (Dckt. #41 at 10–11). He has not, however, demonstrated that punitive damages are recoverable under the circumstances of this case. The sole authority Miller relies on in support for an award of punitive damages is a non-precedential order issued by the Appellate Court of Illinois, wherein the court affirmed the circuit court's decision to deny punitive damages under the Act. (*Id.* (citing *Bone v. Coyle Mech. Supply, Inc.*, 2017 IL App (5th) 150117-U)).

In this Circuit, a plaintiff cannot rely on general theories about possible damages to establish jurisdiction. *See, e.g., Am. Bankers Life Assur. of Florida v. Evans*, 319 F.3d 907, 909 (7th Cir.2003). A plaintiff must do more than "point to the theoretical availability of certain categories of damages" and must provide specific proof he would be entitled to such damages. *Id.* For example, in *McMillian*, the Seventh Circuit held that theoretical, unsubstantiated damages for future medical expenses and future pain and suffering were insufficient to satisfy the plaintiffs' burden. *McMillian*, 567 F.3d at 845. In explaining its

---

[2] As part of his oppression claim, Miller also alleges that defendants violated the Act when they denied him access to UR's books and records. (Dckt. #41 at 13). Under the Act, a shareholder has the right to examine books and records of the corporation, and any corporation or officer who wrongfully refuses to allow a shareholder to examine its records shall be liable to the shareholder in penalty of up to ten percent of value of shares owned by the shareholder, in addition to any other damages. 805 ILCS 5/7.75. However, as explained in Section A.I, Miller has not offered any evidence to rebut McInerney's opinion that Miller's shares have *no* value. Thus, this argument also does not provide him any assistance in meeting the amount in controversy.

holding, the Seventh Circuit noted that the plaintiffs did not "point [the court] to cases in which the plaintiffs had suffered similar injuries and the jury awarded pain and suffering damages in amounts that would satisfy the jurisdictional requirements." *Id.* at 845.

Likewise, here, Miller has done nothing more than assert the theoretical availability of punitive damages, without pointing the Court to any evidence or cases which demonstrate that plaintiffs that have suffered injuries similar to the injuries alleged by Miller have been awarded punitive damages in an amount sufficient to satisfy the jurisdiction requirements. Accordingly, Miller's speculation that he is entitled to punitive damages will not be considered in calculating the amount in controversy.

### c. Miller's attorneys' fees incurred *after* he filed his complaint do not count toward the amount in controversy.

Miller further argues that because the Act permits a plaintiff in a shareholder oppression action to recover attorney's fees, those fees count toward the amount in controversy. (Dckt. #41 at 10–11). If Miller had incurred fees prior to filing suit, and those fees were compensable under the Act, then they may potentially have counted toward the amount in controversy. But that is not what Miller argues. Instead, Miller contends that his legal expenses incurred *after* filing his complaint count toward the $75,000 jurisdictional amount. (Dckt. #41 at 10–11). This argument is not supported by the cases cited by Miller nor the law in this Circuit, and cannot be reconciled with the fact that this Court must analyze jurisdiction as of the date the lawsuit was filed. *See Gardynski–Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958–59 (7th Cir. 1998); *Hart-Schering-Plough Corp.*, 253 F.3d 272, 274 (7th Cir. 2001). The Court therefore cannot consider any attorney's fees Miller incurred after filing his complaint when calculating the amount in controversy.

11

### d. Defendants are not bound by their statements regarding subject matter jurisdiction made in a joint status report.

Finally, Miller contends that the amount-in-controversy requirement is met because defendants admitted that the Court has jurisdiction in a joint status report. (Dckt. #41 at 8) (citing Dckt. #13 at 1). The Court, however, does not find that the statement in the joint status report binds defendants because it is not a judicial admission. *See Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them."); *Clausen Miller, P.C. v. Citibank, N.A.*, 738 F.Supp.2d 850, 854 (N.D.Ill. 2010) ("[A] statement made in a joint status report does not fall into that category of judicial admissions because the purpose of the report is to inform the court of the nature of the case and assist in case management, rather (as in the case of a brief) to decide a contested issue . . .").

In sum: defendants' motion for summary judgment is granted because Miller has failed to demonstrate that the amount in controversy plausibly exceeds $75,000. Because the Court lacks subject matter jurisdiction over this case, it need not—and indeed, cannot—proceed to the merits of Miller's cross-motion for partial summary judgment.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment, (Dckt. #36), is granted, and plaintiff's cross-motion for partial summary judgment, (Dckt. #40), is denied as moot.

**Date: October 16, 2024**

**Jeffrey I. Cummings**
**United States District Court Judge**

12